IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| v. | | Case No. 1:21-cr-00223-1 |
| BRANDON CADE, | | Hon. Charles R. Norgle |
| Defendant. | | |

## ORDER

Defendant's request for an evidentiary hearing is denied. Defendant's motion to suppress evidence [26, 27] is denied.

## MEMORANDUM OPINION

Defendant is charged with knowingly possessing a firearm after previously being convicted of a felony. See 18 U.S.C. §§ 922-924. Specifically, the indictment charges Defendant with possessing "a loaded Taurus G2C 9mm semi-automatic handgun, bearing serial number 488596391." Dkt. 1 at 1. Defendant was arrested on the night of September 6, 2020 by police officers who were wearing body cameras, with the following events recorded. The government submitted, and the Court has reviewed, the body camera footage from that evening.

### I.    BACKGROUND

Around 8:30pm that evening, Chicago police officers observed from their vehicle Defendant and an individual ("Individual 1") standing in the middle of West Monroe Street near Kildare Avenue. Defendant had a black bag over his shoulder. Defendant is not visible in the body camera footage until the officers turn on their emergency lights, pull over, and exit their vehicle. Ex. 1 at 2:00-3:00. Defendant and Individual 1 are in the street standing near a white sedan with headlights on. Id. No one is in the driver or passenger seat of the sedan. Id. Individual

1 has a red, plastic Solo cup in her hand and Defendant does not have any bag over his shoulder. Id. The officer turns on the audio of his body camera, and can be heard asking Individual 1, "what is in the cup?" Id. Individual 1 tilts the cup to show the officer its contents, and the officer asks, "what is it?" Id. Individual 1 responds, "juice." Id. "That's juice?", the officer asks. "Yeah, with a little liquor in it," she replies. Id. The officer asks Individual 1 for a driver's license. As she reaches into the vehicle, the officer asks Defendant, "where did that little bag go?" The officer asks Individual 1 if the sedan belongs to her and she responds, "it's my grandmother's car"–a fact confirmed by the authorities sometime later. Id.

While Individual 1 sorts through some papers she pulled from the sedan's glove compartment, the officer points his flashlight into the backseat of the vehicle. From outside the vehicle, the officer observes a child seated in a car seat and a bottle of alcohol on the car floor in plain view. Id. at 3:00-4:00. The officer turns to Defendant and asks, "where'd that little bag go that you had, bro? You had something strapped around your shoulder." Id. "Nah, I aint got no bag," Defendant responds. Id. "You just had something strapped around your shoulder when we went this way," the officer replies. Id. Defendant again says, "I aint got no bag." Id. The officer turns back to Individual 1 and asks, "what's the bottle right here on the floor? What's that bottle, Don Julio?" Id. "Yeah," Individual 1 responds. Id.

Upon confirming the presence of an opened bottle of alcohol in the vehicle, the officer instructs Individual 1 to move to the back of the vehicle. Id. She complies, but says, "you can't search the car. I've got insurance on the car." Id. "You got open alcohol in the car. Yes, I can," the officer says as he opens the front driver's side door. Id. "Well, we not driving or nothing," Individual 1 responds. Id. The officer shines his flashlight on a black bag in the driver's seat of the vehicle. Id. The officer lifts open the side pouch of the bag and shines his flashlight inside.

2

Id. He looks up and asks if either Individual 1 or Defendant have a license to carry a firearm. Id. at 4:00-5:00. They both say no. The officer then pulls a firearm out of the bag and cycles out several rounds of ammunition. Id. The officer identifies the bag as the one he had previously seen on Defendant only minutes earlier. Defendant was arrested. Defendant later admits that the firearm was his.

## II.   DISCUSSION

Defendant filed a motion to suppress arguing that the government lacked probable cause to (1) stop and detain Defendant, (2) search the black bag and the vehicle, and (3) arrest Defendant. Defendant also requested the Court conduct an evidentiary hearing on his motion. The government argues that (1) the officers' investigatory stop was justified because they had a reasonable suspicion that Defendant was drinking in a public way, obstructing traffic, and violating an ordinance purportedly banning the use of headlights on parked vehicles, (2) Defendant did not have an expectation of privacy in the vehicle or bag and the search of both was supported by probable cause, and (3) the officers had probable cause to arrest Defendant for possessing a firearm without a license. For the reasons below, the Court denies Defendant's motion to suppress.

### A. Defendant has not shown that there are any disputed issues of material fact to justify holding an evidentiary hearing on his motion to suppress.

As a threshold matter, the Court denies Defendant's request to hold an evidentiary hearing on his motion. Defendant "bears the burden of establishing the necessity of a hearing." United States v. Rodriguez, 69 F.3d 136, 141 (7th Cir. 1995). "A defendant must present 'definite, specific, detailed, and nonconjectural' facts that justify relief before a district court will grant a suppression hearing. Additionally, these facts must be material, and they must be disputed." United States v. Randle, 966 F.2d 1209, 1212 (7th Cir. 1992); United States v. Curlin, 638 F.3d 562, 564 (7th Cir. 2011); United States v. McGaughy, 485 F.3d 965, 969 (7th Cir. 2007).

3

Defendant has not identified any material facts in dispute and the entire encounter between Defendant and the police was video recorded. Defendant did not submit any affidavit or other evidence. Nor does Defendant challenge the authenticity of the video recording. Defendant submitted only a motion signed by an attorney, which is not evidence. As a result, without any material factual issue in dispute, the Court declines to hold a suppression hearing and will rule on the motion to suppress based on the parties' briefing and the video footage submitted by the government.

**B. After seeking voluntary cooperation through non-coercive questioning, the police officers had a reasonable suspicion that Defendant was engaged in unlawful activity, justifying an investigatory stop.**

On a motion to suppress, a "defendant who seeks to suppress evidence bears the ultimate burden of proof and persuasion in making a prima facie showing of illegality." United States v. Barrera-Martinez, 274 F. Supp. 2d 950, 955 (N.D. Ill. 2003); United States v. Zambrano, No. 1:20-CR-00049, 2021 WL 3709194, at *5 (N.D. Ill. Aug. 21, 2021) ("It is a well established rule that the burden is on the movant to make specific factual allegations of illegality, to produce evidence and persuade the court that the evidence should be suppressed.") (quoting United States v. Madison, 689 F.2d 1300, 1308 (7th Cir. 1982)).

Defendant complains that the officers had no probable cause to stop him at the outset. Dkt. 26 at 4. However, (1) the interaction between the officers and Defendant did not begin as an investigatory stop and (2) the standard necessary to justify an investigatory stop is a reasonable suspicion of unlawful activity, not the heavier standard of probable cause. Alabama v. White, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that

reasonable suspicion can arise from information that is less reliable than that required to show probable cause."). In general, there are "three categories for police-citizen encounters in relation to the Fourth Amendment":

> The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe a person has committed or is committing a crime. The second category is an investigatory stop, which is limited to a brief, non-intrusive detention. This is also a Fourth Amendment "seizure," but the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning. This is not a seizure within the meaning of the Fourth Amendment.

United States v. Johnson, 910 F.2d 1506, 1508 (7th Cir. 1990) (cleaned up). For the third category, "the degree of suspicion that is required is zero." Id. (cleaned up); United States v. Goodwin, 449 F.3d 766, 770 (7th Cir. 2006) ("A stop as unintrusive as the one in Lidster, or as brief as when a police officer by approaching a person on the street (or at work, or on a bus) to ask him a question causes him to stop for at least the time needed to hear the question and answer (or refuse to answer) requires no suspicion to be lawful.") (cleaned up).

Here, the officers began their interaction with Defendant and Individual 1 in the third category, by exiting their vehicle and asking them non-coercive questions. Ex. 1 at 2:00. The officer asked Individual 1 what was in her red Solo cup, and she told him it was juice with liquor in it. Id. It was only after she informed the officer that she was drinking alcohol did the officers initiate a Terry stop, asking Defendant to move to the back of the vehicle and frisking him for weapons. Id.

Thus, the operative question is whether the officers had a reasonable suspicion of unlawful activity at that time. "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance

5

of the evidence, and obviously less than is necessary for probable cause." <u>Kansas v. Glover</u>, 140 S. Ct. 1183, 1187 (2020) (<u>quoting</u> <u>Prado Navarette v. California</u>, 572 U.S. 393, 397 (2014). The standard is objective, relying on information available to the officer at the time and drawing reasonable inferences therefrom, without regard to the officer's subjective impressions. <u>Penn v. Chicago State University</u>, 162 F.Supp.2d 968, 976 (N.D. Ill., 2001); <u>Kansas v. Glover</u>, 140 S. Ct. 1183, 1188 (2020) ("[W]e turn to whether the facts known to Deputy Mehrer at the time of the stop gave rise to reasonable suspicion."). The standard is also a practical and flexible one, depending "on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Courts cannot reasonably demand scientific certainty where none exists. Rather, they must permit officers to make commonsense judgments and inferences about human behavior." <u>Kansas v. Glover</u>, 140 S. Ct. 1183, 1188 (2020). The reasonable suspicion standard is satisfied if an officer has a reasonable basis to believe any law is being violated, including parking violations and misdemeanors. <u>United States v. Shields</u>, 789 F.3d 733, 745 (7th Cir. 2015) ("Because the officers believed that Mr. Shields was in the process of committing a parking offense, they had, at a minimum, reasonable suspicion to believe that the law was being violated.").

Here, the officers at least had reasonable suspicions that Defendant and Individual 1 were drinking in a public way and obstructing traffic by standing in the middle of the road. The officers' observation that Individual 1 was drinking from a red, plastic cup while standing in the middle of the road on a dark September night alone suffices as a reasonable suspicion that she might be drinking an alcoholic beverage with Defendant. That conclusion is buttressed by Individual 1's admission that there was liquor in her cup, an admission she made before the officers initiated the <u>Terry</u> stop. <u>See</u> <u>Smith v. Ramirez</u>, 2014 WL 4070202, at *5 (N.D. Ill. Aug. 14, 2014). Drinking

6

alcohol in the middle of the road violates the Municipal Code of Chicago Section 8-4-030(a)(1), which prohibits "any person to drink any alcoholic liquor . . . on any public way or in or about any motor vehicle upon a public way in the city." M.C.C. § 8-4-030(a)(1). The fact that Individual 1 possessed the red cup and Defendant did not does not make the officer's suspicion unreasonable. Because the two were together, engaging in unusual behavior by standing in the middle of the road together, it is not unreasonable for an officer to pull both of them aside to ask a few questions. Further, because both Defendant and Individual 1 were standing in the middle of the road at night, the officers had a reasonable suspicion to investigate a potential violation of Municipal Code of Chicago Section 9-80-180, which prohibits the obstruction of traffic. M.C.C. § 9-80-180. Thus, the Terry stop was justified by the reasonable suspicions of the officers that Defendant had engaged in unlawful activity.[1] The presence of a child in the back seat of the vehicle as this is progressing is noteworthy as well.

### C. The officer's search of the vehicle and bag was supported by probable cause, and Defendant lacks standing to challenge the search regardless.

To support a motion to suppress based on an allegedly unlawful search under the Fourth Amendment, a defendant must show that he has standing. "A 'search' within the meaning of the

---

[1] The government also argues that because the vehicle's headlights were on while the car was parked, the officers had reasonable suspicion of a violation of MCC § 9-76-090(c), which the government claims prohibits the use of headlights on parked cars, but the government appears to rely on a faulty reading of that provision. In general, Chicago requires vehicles to keep their headlights on at night and in bad weather. M.C.C. § 9-76-050(b). However, headlights are not required to be on when the car is parked. M.C.C. § 9-76-090(a) ("Whenever a vehicle is lawfully parked at nighttime . . . no lights need be displayed upon such parked vehicle."). Although headlights are not required to be displayed while the vehicle is parked, if they are displayed, the vehicle's high-beams, often referred to as "brights," must be disengaged. M.C.C. § 9-76-090(c) ("Any lighted head lamps upon a parked vehicle shall be depressed or dimmed."); see M.C.C. § 9-40-100 ("On approaching another vehicle proceeding in an opposite direction and when within not less than 350 feet of such vehicle, the operator of a motor vehicle equipped with electric headlight or headlights shall dim such headlight or headlights."); Am. Jur. 2d Automobiles § 255. Another Court in this District recently concluded that these Chicago ordinances did not prohibit the use of headlights on parked vehicles. United States v. Phillips, 430 F.Supp.3d 463, 474 (N.D. Ill. 2020). This mistake may have been a reasonable mistake of law, which can still support a reasonable suspicion of unlawful activity. Heien v. North Carolina, 574 U.S. 54, 68 (2014). However, because the parties have not briefed the issue, and because the officers had independent reasonable suspicions, the Court does not reach the issue.

Fourth Amendment occurs only where an individual has a reasonable expectation of privacy in the area searched. If such an expectation is lacking, the individual has no standing to challenge the search." United States v. Kelly, 772 F.3d 1072, 1083–84 (7th Cir. 2014) (cleaned up). Further, even if a defendant has standing, "under the 'automobile exception' to the Fourth Amendment's warrant requirement," police may "search a vehicle without a warrant when they have probable cause to believe it contains contraband or evidence of a crime." United States v. Wimbush, 337 F.3d 947, 950 (7th Cir. 2003); United States v. Jones, 893 F.3d 66, 70 (2d Cir. 2018) ("Although the Fourth Amendment generally requires police to obtain a warrant before conducting a search, there is a well-established exception for vehicle searches. If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more.") (cleaned up). Here, Defendant's motion to suppress fails because (1) Defendant had no expectation of privacy in the vehicle, (2) Defendant abandoned his bag, and (3) the officer's search was nonetheless supported by probable cause.

First, Defendant had no expectation of privacy in a vehicle that was not his. The vehicle belonged to Individual 1's grandmother, a fact Defendant does not contest. "The general rule is that a person has no reasonable expectation of privacy in an automobile belonging to another." United States v. Spotted Elk, 548 F.3d 641, 657 (8th Cir. 2008). There are some exceptions to that rule, especially for the personal belongings of passengers in a vehicle. See Brendlin v. California, 551 U.S. 249 (2007). However, Defendant has provided no evidence indicating that he was a passenger in the vehicle. To the extent he was a passenger in that vehicle previously, Defendant cites no "authority for the proposition that a person who was a passenger in the past retains standing to challenge future searches of someone else's car." United States v. Spotted Elk, 548 F.3d 641,

8

657 (8th Cir. 2008). As a result, Defendant had no protectable privacy interest in the vehicle and lacks standing to assert a Fourth Amendment violation of its search.

Second, when a defendant denies owning a piece of property, he generally cannot later assert a protected privacy interest in it. United States v. Basinski, 226 F.3d 829, 837 (7th Cir. 2000). The Seventh Circuit has held that when a defendant "is caught red-handed with or near a container of contraband" and then "denies that the container or its contents are his," he has abandoned that property. Id. "Abandoned property is not subject to Fourth Amendment protection. This is because Fourth Amendment protection only extends to places and items for which a person has a reasonable expectation of privacy, and no person can have a reasonable expectation of privacy in an item that he has abandoned." Id. at 836. Because Defendant repeatedly denied possessing the bag in which the firearm was found, he cannot retroactively assert that his privacy was invaded by the officer's search of the bag. Thus, Defendant also lacks standing to assert a Fourth Amendment violation because he has no protectable privacy interest in the bag.

Third, even if Defendant had standing to assert a Fourth Amendment violation, it would fail here. The officer identified an open container of alcohol in the passenger area of the vehicle, a violation of at least 625 ILCS 5/11–502(a). People v. Lepak, 2011 WL 9558010, at *2 (Ill. App. 1 Dist., 2011) ("To sustain a conviction for the illegal transportation of alcohol, the State was required to prove beyond a reasonable doubt that defendant, as the driver of a car, carried, transported, possessed, or had any alcoholic liquor in the passenger area of his car upon a highway and that the alcohol in question was not in the original container with an unbroken seal."). The officer confirmed with Individual 1 that the open container was alcohol. That gave him probable cause to search the rest of the vehicle for other open containers of alcohol. People v. Crump, 2021 WL 2853025, at *4 (Ill. App. 1 Dist. 2021) ("We find the officers were justified under the

automobile exception to search defendant's drawstring bag for additional opened containers of alcohol. The Illinois Vehicle Code prohibits transporting, carrying, or possessing any alcohol within the passenger area of a motor vehicle except in the sealed original container."); People v. Cunitz, 510 N.E.2d 471, 475 (Ill. App. 1987) ("Since the open containers of alcohol constituted the offense of illegal transportation of alcohol, Officer Owens was justified in seizing those containers which were in plain view and searching the vehicle for any other evidence of open alcohol.") (cleaned up); United States v. McGuire, 957 F.2d 310, 314 (7th Cir. 1992) ("Once Trooper Newman discovered that McGuire was transporting open, alcoholic liquor in violation of Illinois law, he had probable cause to believe that the car contained additional contraband or evidence.") (cleaned up); United States v. Charles, 801 F.3d 855, 860 (7th Cir. 2015). Thus, for several independent reasons, Defendant's Fourth Amendment challenge to the search fails.

## D. Defendant's arrest was supported by probable cause.

Finally, Defendant's ultimate arrest was supported by probable cause. The officers performed an investigatory stop and questioned Defendant and Individual 1. Defendant complains that the officers detained Defendant during that time, but detention is not synonymous with arrest. United States v. Reedy, 989 F.3d 548, 552 (7th Cir. 2021) ("Under Terry, police officers may briefly detain a person for investigatory purposes based on the less exacting standard of reasonable suspicion that criminal activity is afoot.") (cleaned up); Gallegos v. City of Los Angeles, 308 F.3d 987, 990 (9th Cir. 2002). Defendant was not handcuffed until the officers determined that there was an open container of alcohol in the vehicle. Even then, the officers told Defendant and Individual 1 that they were not under arrest. Only once the officers located the firearm and confirmed that the Defendant did not have a license to possess it did the officers place Defendant under arrest. It was also apparent that Defendant had lied about possessing the black bag. Because

10

at that time the officers had seen Defendant with that bag, had discovered a firearm in that bag, and had confirmed that Defendant did not have a license to lawfully possess that firearm, the officers had probable cause to arrest Defendant.

Because Defendant's arrest was lawful, the search of the bag was supported by probable cause, and Defendant does not have standing to challenge the search of the bag or the vehicle at issue, Defendant's motion to suppress evidence is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 13, 2021